Filed 1/2/26  Doe v. Coronado Unified School District CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CORONADO UNIFIED SCHOOL DISTRICT,<br><br>    Defendant and Appellant. | D084342<br><br><br><br>(Super. Ct. No. 37-2021-00006011-CU-PO-CTL) |

APPEALS from a judgment and order of the Superior Court of San Diego County, Kevin A. Enright, Judge.  Affirmed in part, reversed in part, and remanded.

Winet Patrick Gayer Creighton & Hanes and Randall L. Winet for Defendant and Appellant Coronado Unified School District.

Law Offices of Brandon M. Smith and Brandon M. Smith for Plaintiff and Appellant Jane Doe.

Coronado Unified School District (CUSD) appeals from the posttrial amended judgment on special verdict and posttrial motions, raising 10

grounds for relief.  Jane Doe (Doe) cross appeals, challenging the court's reallocation of the jury's fault allocations.

We affirm the jury's finding that CUSD was negligent, its recognition of Jordan Bucklew's culpability, and the amount of the award of damages.  But we conclude the trial court erred in excluding Doe's parents from the special verdict form's list of individuals and entities to whom the jury could assign a percentage of fault for purposes of apportioning noneconomic damages.  Accordingly, we reverse and remand for a limited retrial on the apportionment of fault.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Doe played on the varsity girls basketball team during her junior and senior years at Coronado High School.  Toler Goodwin served as the head varsity coach for the team, and Bucklew was the assistant coach.

By the end of her junior season, Doe considered Bucklew to be a friend, and she, a teammate, and Bucklew had a private online chat group.  Starting over the summer, Doe's parents paid for her to participate in group and one-on-one training sessions at the high school with Bucklew, who also worked as a personal trainer.  Doe's mother knew that Doe would be alone with Bucklew during some of these sessions, but she was not concerned because she had met Bucklew and was aware that other girls were taking private sessions with him.  Neither parent ever went to watch any of the private training sessions.

During Doe's junior and senior years, teammates Lauren and Allison White[1] reported frequently seeing Doe sitting in Bucklew's personal vehicle on the street next to the school. According to several girls on the team, during practice, Bucklew would discuss that he and Doe had gone together to scout other teams. Lauren and Allison explained that Goodwin was present at these times and would have witnessed the same incidents.

One day in September 2019, Bucklew gave Doe a long hug during a private training session that she described as "feeling super weird." Starting that day, Bucklew told her he would like to take a picture together every day to show her that he was there for her. From then on, they took photographs together around campus, and Doe said they did not try to hide what they were doing from others. They took several of the photos after training sessions. They began arriving early for team practice on a daily basis as well as staying after practices to talk. According to Doe, Goodwin was usually in the coaches' office before team practices and would join them in the gym just before the practice started. On a few occasions, she said Goodwin left before they did in the evening. She also recalled Robin Nixon, the athletic director, stopping by the weight room on a handful of occasions when Doe was training alone with Bucklew and reminding them to lock up and turn off the lights before they left.

On December 6, 2019, Bucklew picked Doe up in front of the school after practice in his personal vehicle and drove her to watch a competitor's basketball game. Doe did not tell her parents she was going. After the game, he drove her to a park in a different part of town. They got out of the car, and he hugged her and massaged her shoulders. Once back in the car, he kissed

---

[1] We refer to Lauren and Allison White by their first names to avoid confusion.

3

her. They drove back to the school in silence. Bucklew parked right outside the school parking lot and made her promise not to tell anyone what had occurred. He taught her a "hand hug" that was intended as an unspoken way of signifying that they trusted each other. From then on, Bucklew initiated the special handshake every time he saw her. He also kissed her every time they were alone, which was almost every day. Often this was before or after practice. She said she also usually saw him on Sundays for small group trainings.

Bucklew also started touching her breasts on a daily basis, including sometimes when they were on campus. On December 26, 2019, he drove her to a residential neighborhood outside of Coronado, parked, and told her to get in the backseat. He removed her sweater and bra and moved her around on top of his lap while kissing her. Although she felt extremely uncomfortable, she did not tell him she did not want to do these things because she "was scared" and "didn't really see a way out of it."

In early January 2020, the team participated in a basketball tournament in Los Angeles. While there, the team wanted to attend a Lakers game but was unable to secure tickets. After speaking with Goodwin, Doe and Bucklew instead went alone to watch the game at a restaurant across the street. On the way back from the restaurant, Bucklew pushed her against the wall of the hotel and kissed her.

After breakfast the next morning, they kissed in his hotel room. Lauren, Allison, and another teammate, Jenevieve Joseph, saw Doe in Bucklew's hotel room, although none of them observed the kiss.

On January 25, 2020, Doe went to Bucklew's apartment. Bucklew carried her to his bedroom and removed all their clothing except for their underwear. He kissed her all over and then digitally penetrated her. About

4

a week later, he touched her vaginal area again while they were in his car in the school parking lot. She got out of the car while his hand was still in her pants.

On January 31, 2020, Allison wrote in a class journal that whatever was happening between Bucklew and Doe made her want to "hurl." Another student read the entry and commented out loud that it was "gross" and that it was obvious to everyone that something inappropriate was happening between a coach and her friend on the basketball team. The teacher overheard the comment and immediately reported the incident to the principal.

CUSD put Bucklew on administrative leave that same day. The principal then left a voicemail at Doe's home asking to speak to her parents about something related to basketball. Doe overheard the message, thought it sounded strange, and texted Bucklew. He immediately called and told her to delete everything on her phone. She deleted their messages and social media content, but not the photographs. Her mother asked to speak with her, having just learned from the school that there were rumors about her and Bucklew. After initially denying the rumors, Doe started crying and admitted she had been spending time with him. Doe's father contacted the Coronado Police Department, and Doe spoke with a detective the following day. The police arrested Bucklew a few days later. He subsequently pled guilty to engaging in an act of unlawful sexual contact with a minor who was more than three years younger.

**B. Procedural Background**

Doe filed a complaint against CUSD and Bucklew in February 2021. The complaint alleged causes of action against CUSD for negligence and negligent hiring, supervision and retention; and against Bucklew for sexual

5

battery and sexual assault. CUSD responded and filed a cross-complaint against Bucklew. However, neither party managed to personally serve Bucklew, and Doe dismissed him prior to trial.

At trial, Doe's counsel explained the primary theory of the case in his opening statement. Although counsel presented some evidence supporting his argument that CUSD was negligent during the process of hiring Bucklew, he primarily focused on CUSD's negligence in supervising Bucklew. He said that Bucklew frequently violated the school's code of conduct with Doe and that, although Goodwin and Nixon observed or were aware of many of these violations, they never questioned Bucklew or investigated the circumstances. The code of conduct prohibited, absent exigent circumstances, meeting individually with a student behind closed doors, remaining on campus with students after the last administrator has left the school site, transporting a student in a personal vehicle unless there was a parent authorization form on file, taking students off campus, and communicating by phone with a student. Counsel submitted that the evidence would show Goodwin and Nixon repeatedly saw Bucklew and Doe alone together or observed Doe sitting in Bucklew's personal vehicle, in addition to being aware of other violations. Doe also argued Nixon did not take the sexual harassment training seriously so as to ensure that the athletic staff was truly informed as to what to watch for with student-staff interactions. In Doe's view, had these individuals done their jobs and investigated Bucklew's code of conduct violations—in other words, had they properly supervised Bucklew—they would have discovered that something was going on with Doe and could have intervened to prevent the harm to her.

At the conclusion of the trial, the jury returned a special verdict finding Bucklew posed a risk of sexual misconduct towards students; CUSD knew or

should have known Bucklew posed a risk of sexual misconduct toward students and this risk created a particular risk to others; Bucklew's risk of sexual misconduct toward students harmed Doe; and CUSD's negligence in hiring, retaining or supervising Bucklew was a substantial factor in causing Doe harm. It awarded Doe $2.5 million in past noneconomic damages and $2.5 million in future noneconomic damages, assigning 10 percent of the fault to Bucklew and the remaining 90 percent to CUSD.

CUSD filed a motion for a new trial, or alternatively remittitur of the verdict, and a motion for judgment notwithstanding the verdict (JNOV). The court found that substantial evidence did not support the jury's apportionment of fault and changed the distribution to allocate 60 percent of the fault to Bucklew and 40 percent to CUSD. It otherwise denied the motion for JNOV and denied the motion for a new trial. The amended judgment on special verdict and posttrial motions was filed on May 30, 2024.

## DISCUSSION

### A. Doe's Parents Should have been Named on the Special Verdict So That the Jury Could Consider Their Conduct in Apportioning Fault.

CUSD contends the court erred by refusing to include Doe's parents on the special verdict for purposes of apportionment of the damages. It argues Doe's mother negligently supervised Doe by (1) not verifying Doe's claims regarding why she repeatedly came home late, (2) not asking why Doe turned off her "Find My Friends" application on her phone, which allowed the parents to track her location, (3) not checking Doe's phone, where she would have seen inappropriate photos of Doe and Bucklew, and (4) agreeing to sign Doe up to participate in private, one-on-one training sessions with Bucklew after hours at the school gym. As to Doe's father, CUSD highlights his

7

testimony that he disliked Bucklew from day one and his statement after learning of the inappropriate relationship that he "knew it." There is no evidence Doe's father followed up in any way on his dislike for Bucklew.

We agree it was error to exclude the parents from the special verdict form.

### 1. Additional Facts

During Doe's mother's deposition, she described her telephone conversation with Bucklew about the proposed training sessions. When counsel asked, "Did you ask Jordan Bucklew if the sessions would be individual or group?" she responded, "Yes. And he said both." She said she did not have or express any concern about her daughter being alone with Bucklew. As to the tracking app on Doe's phone, when asked if she looked at it from time to time, she said "No." When Doe turned it off, she did not ask why she had turned it off, she just told her to turn it back on. She acknowledged that Doe started coming home late in December 2019. When the mother asked why, Doe lied and said she was with two friends, but the mother did not confirm Doe's story with the girls or their parents. She also did not check Doe's phone in 2019 or 2020 to look at any of the photos she was taking.

Doe's father did not recall whether his wife told him it would be individual or group training, and he did not discuss it with his daughter, but he was under the impression that it would be group training. He said he was not "a fan" of Bucklew because Bucklew never looked him in the eye and did not talk to him, and he just did not like his demeanor. During his recorded interview with the police, the father said:

"And I watch, I said this last night, I've been watching this entire season the interaction between her and him because I don't like it. I

8

don't like their relationship. I don't know what that is. I've never ever ever seen on the court, like when she goes to the bench, or you know, no weird touching. No weird like. And I'm intently watching because I don't trust what's going on. I just don't trust. I told you so. I knew it. I knew it. I knew it. The damn parents justify to me that this guy's a good guy. My wife telling me, and you know and I knew it. 20 something year old and 30 something year old man don't spend that kind of time. I don't care if its with one or if its with four high school girls. You just don't. Whether your fat or skinny or tall or short they just don't do it. I don't care it is. Guys are pigs. It is what it is. Guys are pigs. 95% of them. There's just no way."

Doe filed a motion in limine seeking to preclude opinion or argument that Doe's parents were negligent. She argued the parents' deposition testimony showed they did not have any actual knowledge of the threat that Bucklew would molest Doe and that, accordingly, no comparative fault could be allocated to them. For this reason, Doe asked that the court exclude her parents from the special verdict form.

In response, CUSD asserted that the law does not require parents to have actual knowledge to be found negligent. In CUSD's view, the parents negligently supervised Doe because her mother agreed to one-on-one training sessions, did not check Doe's phone, knew Doe was staying out late at night with her tracking app off, did not ask Doe why she had turned off the tracking feature on her phone, and never checked the tracking feature once Doe turned it back on. The father did not like Bucklew, but did not act upon his suspicions and let Doe go to trainings with him.

The court deferred ruling on the motion until after both parents had testified. At trial, Doe's mother testified that she "had some concerns" during

9

Doe's senior year that something was bothering Doe, and she noticed that Doe was less social with friends, did not go to homecoming, and did not play club soccer. But the mother said she chalked it up to Doe being a senior and did not mention having discussed any of it with Doe. She also acknowledged that she had stated during her deposition that Bucklew told her Doe would participate in both individual and group training sessions. She testified she and her husband argued about whether to pay for the personal training sessions because he said he did not like Bucklew. Nonetheless, after they signed her up, neither she nor her husband ever observed any of her daughter's training sessions, and the mother never watched the practices.

The mother reiterated that when she found out the tracking app was off, she asked Doe to activate it again. She did not ask why Doe had turned it off. She otherwise never checked Doe's phone during her junior or senior year and never checked the tracking app when Doe started coming home late. She also did not confirm with the friends or their parents that Doe had actually been with them on the nights she was out late.

Doe's father testified that he did not care for the basketball coaches because they did not interact with the parents as his children's prior coaches had done. He said he was not initially in favor of the private training sessions and did not like Bucklew, but that he eventually agreed. He explained that he did not understand that some of the training sessions would be one-on-one—he thought two other girls were participating. He acknowledged Doe stayed out late during winter break but did not think it was late enough to be at the point of concern.

The father confirmed that he never attended any of Doe's training sessions or asked her about them. CUSD's counsel played a video recording of the above-referenced portion of the father's police interview. The father

10

denied that when he said, "I knew it" he meant that he knew his daughter was being sexually abused by a coach. But he confirmed that he did not say anything to anyone at CUSD about his dislike for Bucklew.

The court granted the motion in limine, concluding that "there is nothing unreasonable about the conduct or lack thereof of either [parent] such that they should be named as potentially 'others' that were negligent or liable in terms of their responsibility for what occurred in this case." As to Doe's mother, the court noted that she was anxious and very emotionally distraught at times during her testimony, but it did not find sufficient evidence to put her on the verdict form. As for Doe's father, the court viewed his statement after learning of the inappropriate relationship that he "knew it" as being an expression of intuition. The court explained that to place him on the verdict form would just invite the jury to speculate as to whether he really knew something.

### 2. Analysis

We ordinarily analyze a special verdict de novo. (*Rodriguez v. Parivar, Inc.* (2022) 83 Cal.App.5th 739, 751.) "A special verdict is 'fatally defective' if it does not allow the jury to resolve every controverted issue." (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 325.) Here, CUSD contends there was substantial evidence in the record that the parents could be at fault and that the special verdict was, therefore, incomplete because it did not include them for purposes of allocating the damages among potentially responsible parties.

Civil Code section 1431.2 requires that anyone potentially liable should be included on the verdict form, even non-parties, so that the jury can assign comparative fault. (See, e.g., *Scott v. Bard* (2014) 231 Cal.App.4th 763, 785.) "A defendant may attempt to reduce his or her share of liability for noneconomic damages by seeking to add nonparty joint tortfeasors. But

11

unless there is substantial evidence that an individual is at fault, there can be no apportionment of damages to that individual." (*Wilson v. Ritto* (2003) 105 Cal.App.4th 361, 367) (*Wilson*). Within this context, " 'fault' is a breach of a duty imposed by law or contract." (*Id.* at p. 369.)

As the first step in our analysis, we acknowledge that Doe's parents may be found to be at fault for purposes of apportionment only if they breached a legal duty owed to Doe. The parties do not dispute that parents have a "special relationship" with their children and, thus, an affirmative legal duty to protect them. (See *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 216 (*Brown*).) Thus, in this case, Doe's parents had a duty to use reasonable measures to protect her from foreseeable injury at Bucklew's hands.

Our legal determination that the parents owed Doe a duty of care in this case does not end the matter. Although the decision as to whether the parents breached their duty to their daughter should be left to the jury (see, e.g., *American Motorcycle Association v. Superior Court* (1978) 20 Cal.3d 578, 607 [allowing defendants to file a cross complaint against plaintiff's parents for negligent supervision]), for purposes of this appeal, we must determine whether the record contains substantial evidence of breach such that the parents should have been placed on the special verdict form. (See *Wilson*, *supra* [substantial evidence of fault must be found before damages can be apportioned to a non-party joint tortfeasor].)

We do not offer an opinion as to whether a jury would conclude that any fault should be allocated to the parents. But, under the particular facts of this case, there was evidence from which the jury could have concluded that one or both of Doe's parents knew or should have known that Bucklew posed a risk of sexual misconduct toward Doe and that a reasonable parent

12

would have taken additional steps to investigate Doe's unusual behaviors and/or her contact with and relationship with Bucklew. The evidence that the parents may have known or should have known that Doe was participating in one-on-one training with Bucklew, combined with evidence as to their lack of follow-up on red flags, is sufficient substantial evidence to support placing the parents on the special verdict form as potentially sharing fault with the defendants.

In asking the jury to consider that question, we recognize that every parent-child relationship is different, and that supervision, especially supervision of older teenagers, is not a one-size-fits-all proposition. Parents must balance appropriate standards and verification of the teen's behavior with demonstration of trust. Every child is unique, and every parent must necessarily exercise discretion in deciding how closely to supervise their teenage child. As our high court described the issue in *Gibson v. Gibson* (1971) 3 Cal.3d 914, 921 (*Gibson*):

" '[A] parent has a wide discretion in the performance of his parental functions, but' . . . although a parent has the prerogative and the duty to exercise authority over his minor child, this prerogative must be exercised within reasonable limits. The standard to be applied is the traditional one of reasonableness, but viewed in light of the parental role. Thus, we think the proper test of a parent's conduct is this: what would an ordinarily reasonable and prudent parent have done in similar circumstances?" (*Gibson, supra*, 3 Cal.3d at p. 921, quoting *Emery v. Emery* (1955) 45 Cal.2d 421, 429.)

Accordingly, by denying CUSD's request to include Doe's parents on the special verdict form, the trial court denied the jury the opportunity to consider the standard articulated in *Gibson*; and because substantial

13

evidence supported a potential finding of parental fault, the jury should have had the opportunity to consider the apportionment of fault to the parents. Finally, we conclude the error was prejudicial, because the jury might have allocated some portion of the fault to the parents, thereby decreasing the damages CUSD was required to pay.

### 3. Actual Knowledge is Not Required.

We are not persuaded by Doe's contention that her parents cannot be found at fault in a negligence action unless they had actual knowledge of the threat of sexual abuse. Doe relies on *Conti v. Watchtower Bible & Tract Society of New York, Inc.,* 235 Cal.App.4th 1214 (2015) (*Conti*) and *Chaney v. Superior Court* (1995) 39 Cal.App.4th 152 (*Chaney*) for this proposition. In *Conti*, a church member, whom church elders knew had been convicted of a misdemeanor for molesting his stepdaughter, repeatedly molested the minor plaintiff during church field service events. (*Conti,* at pp. 1218–1219.) Applying the special relationship doctrine and the factors set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*), the court concluded the church defendants had a legal duty to exercise reasonable due care to restrict and supervise the offending church member during field service to prevent him from molesting children in the community and in the congregation during church-sponsored field service. (*Conti,* at pp. 1233, 1235.) However, in addressing the defendants' claim that the jury also should have been allowed to consider whether the plaintiff's parents were partially liable for negligently supervising the plaintiff and for entrusting her to the offending member's care, the court neither considered their duty under the special relationship doctrine and the *Rowland* factors, nor addressed whether breach of their duty to exercise reasonable due care in supervising their daughter could have resulted in the harm. (*Id.* at p. 1237.) Rather,

14

without analysis, it cited to *Chaney* as holding that "parent must have actual knowledge of threat of molestation to be liable for negligent supervision of the victim." (*Conti,* at p. 1237.)

In *Chaney*, the minor plaintiff alleged that a family friend sexually assaulted her in his home and that the assailant's wife negligently supervised her. (*Chaney, supra*, 39 Cal.App.4th at p. 155.) Specifically, the complaint alleged that the husband "paid 'excessive attention' to her and was 'excessive' in his gift giving," and that the wife was negligent in "failing to recognize these 'signs' as indicative of the *possibility* that her husband was sexually molesting [the minor] which caused her to fail to investigate the situation." (*Id.* at p. 156–157.) As a result, the wife " 'unintentionally provided unchecked access to [the minor] for [her husband],' which caused [the minor] to suffer 'serious and lasting injury.' " (*Id.* at p. 157.)

Although the court determined that the wife assumed a special relationship with the dependent child when she invited her into her home, it concluded "that public policy requires that where a child is sexually assaulted in the defendant wife's home by her husband, the wife's duty of reasonable care to the injured child depends on whether the husband's behavior was reasonably foreseeable." (*Chaney, supra*, 39 Cal.App.4th at p. 157, citing to *Uccello v. Laudenslayer* (1975) 44 Cal.App.3d 504, 514, fn. 4.) The court concluded that a wife is not required to assume her husband is likely to molest a child and that, without knowledge of her husband's deviant propensities, a wife cannot foresee that he poses a danger and thus does not have a duty to take measures to prevent the assault. (*Chaney*, at pp. 157–158.)

We read *Chaney* as having applied the *Rowland* factors and engaged in an appropriate consideration of whether public policy weighed against

15

holding the defendant to the duty otherwise imposed by her special relationship with the victim, even though it came to a different conclusion based on the circumstances of the claim. (See *Chaney, supra*, 39 Cal.App.4th at p. 157.) Contrary to the court in *Conti*, we do not read *Chaney* as establishing a bright-line rule that parents can never be at fault unless they actually knew of prior misconduct by a third person who interacted with their child.

Under current precedent, we disagree that parental liability should be assessed under a different framework than any other defendant. Whatever the appropriate standard may have been 30 years ago for a parent supervising someone else's child in their home, we conclude that numerous recent cases have shown that sexual misconduct is foreseeable when one sends their child into situations where they may be alone with an adult at a school, a church, a sports competition, or a youth organization—regardless of whether the defendant has knowledge of prior misconduct by the individual. (See *Roe v. Hesperia Unified School Dist. (*2022) 85 Cal.App.5th 13, 28 [declining to follow a case applying the *Chaney* rule in a matter where a janitor molested students and noting that, " '[s]imply put, the school grounds provide a different setting than an adult's home' "]; *Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 676 [based on evidence the Archdiocese was well aware of numerous priests having sexually abused minors around the country, "it was reasonably foreseeable that minors attending catechism classes in 1988 might be sexually molested by a priest, even though the Archdiocese did not have knowledge of prior sexual misconduct by [that priest] specifically"]; *Brown v. USA Taekwondo* (2019) 40 Cal.App.5th 1077, 1097–1098 [because evidence showed sexual abuse of youth athletes by credentialed coaches was "rampant," "it was foreseeable

16

youth athletes attending Olympic qualifying competitions with their coaches might be sexually molested by their coaches, regardless of whether [defendant] had knowledge of prior sexual misconduct by [the coach]"]; *Doe v. United States Youth Soccer Assn., Inc.* (2017) 8 Cal.App.5th 1118, 1132–1133 [concluding "it was reasonably foreseeable to defendants that a child participating in their soccer program would be sexually abused by a coach" given that the soccer programs adopted a KidSafe Program based on evidence of past abuse and evidence showing that sexual abusers "are drawn to places where there are children"]; *Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 404 (*Juarez*), disapproved on other grounds by *Brown, supra*, 11 Cal.5th 204 [concluding "that it should be reasonably foreseeable to the Scouts that a child participating in scouting might fall prey to a sexual predator, with no documented history of such proclivities, who is serving as an adult volunteer in the child's scouting troop"].) As the *Juarez* court noted in discussing a 1962 case where a girl was raped while staying at an overnight camp, "in the almost 40 years since these words were written, the scourge of sexual molestation of children has not abated; and the danger that a child who participates in organized youth activities will encounter a sexual predator certainly is at least as foreseeable now as it was then." (*Juarez, supra,* 81 Cal.App.4th at p. 404.) And, as Doe's expert, Dr. Billie-Jo Grant-Ghanotakis (Dr. Grant), testified in this case, "[i]n 2019 and today, sexual misconduct is a known foreseeable risk in schools." All these categories of molestation cases have been widely publicized and have resulted in schools, churches, and youth organizations adopting policies to avoid future harm to children. As a result, an ordinarily reasonable and prudent parent must also have an awareness of the risks and a responsibility to keep these risks in mind when undertaking their affirmative legal duty to protect their children,

even in the absence of knowledge of prior sexual misconduct by a specific coach.

Here, the court declined to include the parents on the special verdict form because it concluded their conduct was reasonable and there was insufficient evidence of guilt. In the court's view, the father's comments that he "knew it" reflected intuition and including him on the verdict would invite the jury to speculate that he really knew something. But the jury did not need to speculate that father "really knew something"; as we discussed above, actual knowledge that abuse is occurring is not required for a finding of fault. (*Juarez, supra*, 81 Cal.App.4th at p. 404 ["it should be reasonably foreseeable . . . that a child participating in scouting might fall prey to a sexual predator, with no documented history of such proclivities"].) Thus, under the facts of this case and for the reasons discussed above, the trial court's decision to exclude the parents from the special verdict usurped the jury's role. For this reason, we conclude the court erred in refusing to name Doe's parents on the verdict form.

## B. CUSD Forfeited its Challenge to Testimony Regarding Sarah Barns.

CUSD contends the court erred by allowing Doe to introduce evidence about the inappropriate relationship between former CUSD student Sarah Barns and Bucklew and that this evidence was highly prejudicial.

### 1. Additional Facts

In support of her contention that CUSD knew or should have known that Bucklew posed a risk to her, Doe planned to call Barns to testify at trial. Barns was one year older than Doe. In 2022, two years after Bucklew's interactions with Doe came to light, Barns told police and others that

18

Bucklew had engaged in very similar conduct with her when she was a senior at Coronado High School.

CUSD filed a motion in limine seeking to exclude any reference to the inappropriate relationship between Barns and Bucklew, arguing it was not relevant and was highly prejudicial. In support of its motion, CUSD provided excerpts from Barns's deposition wherein she testified that she and Bucklew did their best to keep the relationship a secret, and that she was not aware of anyone from the school district having any idea about their relationship before she disclosed it in March 2022.

After hearing several offers of proof by Doe's counsel, the court denied the motion in limine and allowed Barns to testify at trial to show CUSD's negligent supervision and retention of Bucklew. Specifically, Doe's counsel told the court that Barns, Joseph, and Lauren would testify that Goodwin saw Barns and Bucklew practicing alone together in the gym, but that he did nothing about it. He also said Lauren and Joseph would testify that they observed Barns and Bucklew alone in his personal vehicle, and he submitted that since Goodwin said he was always around and never missed a practice, there is a definite inference that he saw it too. In summarizing the argument by Doe's counsel, the court stated, "[Doe's counsel] has represented to me that he has three witnesses that are coming forward that are going to say that Mr. Goodwin, the head coach, was in a position where he was present, where things were apparent to those present that may allow, that could cause, that to reasonable people would cause a suspicion of what was taking place between Barns and Bucklew." Based on counsel "as an officer of the Court telling me what he plans to do, refuting [CUSD's] position that Goodwin and the district knew nothing, nor should they have known anything[,]" the court

19

made its ruling "without hearing any testimony" and "without hearing any opening statements."

Doe's counsel had also argued that learning about Bucklew's relationship with Barns caused Doe significant emotional distress and set back her mental health treatment. As to this point, the court expressed that it did not know how to "surgically dissect" the evidence about the effect Barns's disclosure had on Doe's damages claim from Barns's testimony regarding what happened to her. As a result, it concluded it could not limit Barns's testimony to only that relevant to damages.

CUSD argues the court should not have relied upon Doe's counsel's assertions and that counsel misrepresented to the court what the evidence would show. Doe disputes that her counsel misrepresented the evidence and asserts Barn's testimony was relevant to prove the foreseeability of Bucklew's potential threat of sexual misconduct, CUSD's liability for negligent retention and supervision of Bucklew, and Doe's damages.

### 2. Analysis

CUSD submits that Doe's counsel misrepresented what the testimony of Barns, Lauren, and Joseph would show and that the court erred in relying on this offer of proof. Even if we assume CUSD is correct—an issue we do not reach—we conclude CUSD forfeited this issue.[2]

"A party desiring to preserve for appeal a challenge to the admission of evidence must comply with the provisions of Evidence Code section 353, which precludes reversal for erroneous admission of evidence unless: 'There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated to make clear the specific

---

[2] The parties did not address forfeiture in their opening briefs. We requested and received supplemental briefing on the issue.

ground of the objection or motion.' " (*People v. Morris* (1991) 53 Cal.3d 152, 187 (*Morris*), quoting Evid. Code, 353, subd. (a).) "Under appropriate circumstances, a motion *in limine* can serve the function of a 'motion to exclude' under Evidence Code section 353 by allowing the trial court to rule on a specific objection to particular evidence." (*Morris,* at p. 188.) But "[g]enerally[,] when an *in limine* ruling that evidence is admissible has been made, the party seeking exclusion must object at such time as the evidence is actually offered to preserve the issue for appeal. [Citations.] The reason for this rule is that until the evidence is actually offered, and the court is aware of its relevance in context, its probative value, and its potential for prejudice, matters related to the state of the evidence at the time an objection is made, the court cannot intelligently rule on admissibility." (*People v. Jennings* (1988) 46 Cal.3d 963, 975, fn. 3 (*Jennings*).)

The *Morris* court further clarified when a motion in limine is adequate by focusing on the precise provisions of Evidence Code section 353. (*Morris, supra*, 53 Cal.3d at p. 189.) Specifically, it directed that "a motion *in limine* to exclude evidence is a sufficient manifestation of objection to protect the record on appeal when it satisfies the basic requirements of Evidence Code section 353, i.e.: (1) a specific legal ground for exclusion is advanced and subsequently raised on appeal; (2) the motion is directed to a particular, identifiable body of evidence; and (3) the motion is made at a time before or during trial when the trial judge can determine the evidentiary question in its appropriate context." (*Morris,* at p. 190; see also 3 Witkin, Cal. Evid. (6th ed. 2025) § 394.)

Here, CUSD brought a motion in limine to prevent Doe, her attorneys, witnesses, and experts from offering or eliciting any evidence of a prior inappropriate relationship between Barns and Bucklew. It sought to exclude

the evidence as irrelevant—because Barns testified that no one at the high school knew about her relationship with Bucklew—and because any probative value of the evidence was far outweighed by its prejudicial impact. CUSD renewed these arguments on appeal. Thus, the motion in limine satisfied the first two prongs of the *Morris* test above.

It is the third prong that points to forfeiture. Prior to trial, the court had not heard any testimony and had only Doe's attorney's offer of proof that Barns would testify to more than she had during her deposition and that two of her teammates would testify that Goodwin had been in a position to observe inappropriate conduct and code of conduct violations. In other words, at that stage, counsel had made an offer of proof that the trial court, in exercising its broad discretion, found adequately demonstrated the relevance and admissibility of the evidence. (See *People v. Morrison* (2004) 34 Cal.4th 698, 724.)

CUSD appears to contend an offer of proof was not sufficient at this stage. CUSD argues the proponent of proffered evidence, in this case Doe, has the burden of producing sufficient evidence to sustain a finding of the preliminary fact under Evidence Code section 403. In its view, the trial court erred by not requiring Doe to produce evidence that a district employee saw Barns in Bucklew's car, or that any CUSD employee was aware of the inappropriate relationship between the two. However, CUSD does not provide authority indicating that counsel's offer of proof was insufficient to sustain a finding that Barns, Lauren, and Joseph would testify to facts showing a CUSD employee knew or should have known of Barns and Bucklew's interactions, and authority appears to state otherwise. (C.f., *People v. Dworak* (2021) 11 Cal.5th 881, 898–899 [concluding a trial court did not abuse its discretion in excluding evidence under section 403 where

22

defendant made no offer of proof that he had read the newspaper articles he was seeking to introduce]; *People v. Rodriguez* (1969) 274 Cal.App.2d 770, 777 [affirming trial court's refusal to allow witness to testify over hearsay objection because appellant's trial counsel did not lay a foundation for the admissibility of the testimony and failed to make an offer of proof as to what the witness would have stated had she been permitted to answer].)

Furthermore, section 403 allows the court to conditionally admit the proffered evidence "subject to evidence of the preliminary fact being supplied later in the course of the trial." (Evid. Code, § 403, subd. (b).) If it does so, it "[m]ay, *and on request* shall, instruct the jury to determine whether the preliminary fact exists and to disregard the proffered evidence unless the jury finds that the preliminary fact does exist." (*Id.*, subd. (c)(1), italics added.) Although the court here did not expressly indicate it was conditionally admitting testimony by and about Barns, neither did counsel request an instruction after it contends the evidence failed to demonstrate the foundational preliminary facts. The court did, however, imply its ruling was subject to change if the testimony did not play out as counsel anticipated. Specifically, it acknowledged in summarizing the parties' positions on the motion in limine: "I can't resolve that dispute. I—I don't know what's going to happen. I don't know what people are going to be testifying, don't know who's going to be called." It then implied its ruling was tentative, explaining, "[s]o I'm accepting as true what Mr. Smith told me, and if it's not true. Then we'll *reconsider*" (italics added).

Nonetheless, after Barns, Lauren, and Joseph testified, CUSD did not renew its objection in any way, nor did it move to strike the evidence at that time under Evidence Code section 353. Our high court addressed a similar scenario in *People v. Champion* (1995) 9 Cal.4th 879. There, the defendant

23

objected in limine to the admissibility of a deputy's testimony immediately before the deputy testified.  (*Id.* at p. 925.)  The trial court overruled the defendant's objections after hearing the prosecution's offer of proof regarding the deputy's proposed testimony.  (*Ibid.*)  The defendant argued the prosecutor's offer of proof was misleading.  (*Ibid.*)  But the *Champion* court explained that "[t]o the extent that there were variations between the offer of proof and [the deputy's] testimony, defendants should have brought them to the court's attention and should have requested that [the deputy's] testimony be stricken.  Because they failed to do so, they may not now complain of any such variations."  (*Ibid.*)

The same is true here.  This was a significant issue for CUSD, the court addressed it at length during the motion in limine hearing, and CUSD made clear that it disagreed with the court's ruling on the motion in limine.  Thus, it was reasonable to expect CUSD's counsel to object after the witnesses did not testify quite as Doe's counsel represented they would in his offer of proof.  It is not uncommon for a witness to testify differently than anticipated.  Indeed, the *Morris* court expressly recognized the exact scenario that CUSD contends occurred here in explaining that a motion in limine may not satisfy Evidence Code section 353's requirements because "[a]ctual testimony sometimes defies pretrial predictions of what a witness will say on the stand."  (*Morris, supra*, 53 Cal.3d at pp. 189–190.)  Had CUSD's counsel timely reinforced the arguments he makes here—that no one testified that Goodwin was in a position to have seen Barns and Bucklew alone such that he should have intervened—the court may have struck the evidence and admonished the jury.  In other words, the context within which the court would have been weighing the prejudice to CUSD would have been different at that juncture.  (See *Jennings, supra*, 46 Cal.3d at p. 975, fn. 3.)

24

CUSD argues in its supplemental briefing that a party need not renew its objection where the court has made clear its ruling is final and definitive. It relies on *Paige v. Safeway, Inc.* (2022) 74 Cal.App.5th 1108 and *Morris, supra*, 53 Cal.3d 152. We find these cases distinguishable. In *Paige*, the court ruled an expert witness could not be asked about the content of certain materials and testing standards because he had not relied upon them, but the court said the plaintiff could ask foundational questions such as whether he was aware of the standards. (*Paige, supra*, 74 Cal.App.5th at p. 1116.) The court said it would reconsider its ruling if the expert testified differently at trial than he had at his deposition. (*Id.* at p. 1117.) Paige did not ask any foundational questions, and it does not appear the expert testified differently than anticipated. (*Id.* at p. 1120.) Had the expert testified at trial that he relied on the materials and testing standards in forming his opinions, the appellate court would have had the opportunity to consider whether Paige should have renewed his objection to the court's ruling under Evidence Code section 353 and *Champion*. He did not, and thus the case is of little relevance. We do not read it as standing for a categorical principle that a renewed objection is not required if the in limine ruling is "final" even if the circumstances have changed.

We explained above the *Morris* court's holding as to when a motion in limine satisfies the requirements of Evidence Code section 353 and when it does not. Suffice it to say, in *Morris*, unlike here, the court found defendant's in limine motion satisfied the three requirements set forth above. (*Morris, supra*, 53 Cal.3d at p. 191.)

Finally, CUSD argues that objecting after the jury had heard all the testimony regarding Barns would have been futile. It cites to *People v. Hill* (1998) 17 Cal.4th 800 where our high court explained that failure to timely

object to prosecutorial misconduct or to request admonishment will not result in forfeiture of an argument on appeal if the objection would have been futile or the admonishment would not have cured the harm. (*Id.* at p. 820.) Assuming this principle applies outside the prosecutorial misconduct realm, we decline to join CUSD in speculating that the trial court would not have reconsidered the ruling on the motion in light of the actual trial testimony or that the trial court would not have fashioned an appropriate remedy, such as by striking the testimony and adequately admonishing the jury.

Accordingly, we find this issue forfeited.

## C. CUSD Has Not Demonstrated it was Prejudiced by the Trial Court's Order Denying its Motion in Limine to Exclude Evidence of Bucklew's Misdemeanor Conviction.

CUSD argues the court erred in denying its motion in limine to exclude evidence of Bucklew's 2006 misdemeanor reckless driving conviction. But although the court denied the motion in limine, when Doe attempted to introduce evidence of the conviction at trial, the court sustained CUSD's objections, so the jury never learned of the conviction.

The only references to the conviction were during Doe's opening statement. Counsel stated, "on his employment application, there was a question about whether or not he had been convicted of any—any crimes, misdemeanor or felony, . . . and he says no, which it turns out not true" and on his second application, "[h]e, again, says no. It's, again, false." As the court instructed the jury, "opening statement is not evidence. . . . You cannot use it to make any decisions in this case." We assume the jury followed the court's instructions. (See, e.g. *People v. Thornton* (2007) 41 Cal.4th 391, 441.)

CUSD's citation to *Mudrick v. Market Street Ry. Co.* (1938) 11 Cal.2d 724, is not helpful to its position. In *Mudrick*, the plaintiff's attorney in his

26

opening statement "represented to the jury the existence of certain facts which plaintiff was prepared to prove, but which plaintiff did not attempt to prove, and which he knew at the time they were made could not be proved." (*Id.* at p. 737.) Here, by contrast, Doe did attempt to prove the misdemeanor, and its existence was readily provable and not disputed. (*See also Smith v. Covell* (1980) 100 Cal.App.3d 947, 958 ["[C]ounsel in opening statements should not, of course, include testimony which they know will not be received" and for which there is no factual basis].)

We conclude that regardless of whether the trial court erred in denying its motion in limine, the jury never heard evidence of Bucklew's misdemeanor conviction and therefore CUSD has not shown any prejudice from the ruling or from the brief comments of counsel during opening statements.

### D. CUSD Has Not Demonstrated Reversible Error as to the Trial Court's Admission of Evidence Regarding Bucklew's Prior Period of Employment.

CUSD contends the court erred by denying its motion in limine to exclude evidence implying CUSD acted negligently in its hiring process. It argues this evidence had nothing to do with Doe because it occurred before Bucklew met her and that it was highly prejudicial.

#### 1. Additional Facts

Bucklew served as a volunteer assistant coach at Coronado High School during the 2013–2014 and 2014–2015 school years. The following year, CUSD paid him for working as an assistant coach. Thereafter, Bucklew resigned and moved to Montana for a year. He then returned as the assistant coach in December 2017, at which time he met Doe.

As to the first three years, Doe introduced evidence showing that CUSD did not follow its normal procedure of requiring volunteers to fill out a form

or obtain an activity clearance certificate if the volunteer had not been fingerprinted, which Bucklew had not. For the 2015–2016 season, Doe presented witness testimony explaining that CUSD did not obtain fingerprint clearance for Bucklew until after the coaching season ended.

CUSD moved in limine to preclude Doe, her counsel, and her witnesses from making any reference to Bucklew's earlier periods of association and employment with CUSD. In CUSD's view, none of this evidence was relevant because it all occurred before he met Doe and because any deficiencies in the earlier hiring process had been cured. Specifically, human resources witnesses indicated that CUSD obtained Bucklew's fingerprints before he returned in 2017 and otherwise followed proper procedures in hiring him at that time. CUSD argued the evidence was prejudicial because it could cause the jury to form the false impression that CUSD had not properly onboarded Bucklew before he met Doe and to determine liability accordingly.

The court denied CUSD's motion, finding the evidence relevant as showing his "entire period of employment, his relationship with Coronado Unified School District, his familiarity with the programs there, what he did there, what he didn't do," and as "contextual as to his relationship from an employment or volunteer point of view with the defendant."

### 2. Analysis

Evidence is only relevant and admissible if it has a "tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, §§ 210, 350.) Even if evidence is relevant, the court may exclude it "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*Id.*, § 352.)

28

We agree that CUSD's pre-2017 procedural omissions had little to do with harm or potential harm to Doe. However, the evidence was at least minimally relevant to show Nixon was lax in following hiring procedures. A member of CUSD's human resources staff testified that during the 2015–2016 school year, Nixon allowed Bucklew to work as a coach even though human resources staff told her he had not completed the paperwork and fingerprinting process. And, although another staff member stated that the human resources department improved its compliance with hiring procedures prior to Bucklew's return, it was not clear that Nixon initiated any changes. On the other hand, the evidence was prejudicial in that it effectively invited the jury to punish CUSD for past deficiencies in its hiring procedures that had been remedied before he was rehired and met Doe.

That being said, our task on appeal is not to decide whether we would have weighed the evidence differently. Whether or not the trial court abused its discretion in denying the motion in limine, we may only reverse because of the erroneous admission of evidence where the error caused a miscarriage of justice. (Evid. Code, § 353, subd. (b).) A miscarriage of justice has occurred only if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.) In this context, a "probability" means " 'a *reasonable chance,* more than an *abstract possibility.*' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.) In this case, even if the court erred in admitting the evidence, we cannot conclude there is a reasonable chance the jury would have ruled more favorably for CUSD had this evidence about the deficient hiring processes in place between 2013 and 2016 been excluded.

First, the evidence was only tangentially relevant to whether CUSD's negligence led to Bucklew's sexual misconduct. Moreover, CUSD's counsel

29

elicited testimony and put forth arguments significantly mitigating its impact. Dr. Edward Brand, CUSD's educational expert, confirmed the human resources witnesses' testimony that Bucklew was properly onboarded when he returned in 2017, and Doe's counsel did not challenge any of this testimony. Then CUSD's counsel addressed the issue in his closing, acknowledging CUSD's hiring process was not perfect prior to 2017, reminding the jury that the system had been fixed prior to Bucklew's rehiring, and noting that Dr. Grant provided no basis for her view that CUSD negligently hired Bucklew. More importantly, he pointed out that no evidence had been presented indicating that anything in Bucklew's fingerprint results disqualified him from working at the school.

Second, it is not reasonably probable that bureaucratic deficiencies were a deciding factor in the jury's minds given the other evidence presented. Such deficiencies paled in comparison to the supervision failures presented at trial. Among other things, the jury heard that Goodwin was present when Bucklew talked about scouting other teams alone with Doe, that Goodwin authorized Doe and Bucklew to go alone to a restaurant to watch the Lakers game, and that Nixon saw Bucklew and Doe alone in the weight room and left them there (with instructions to turn off the lights). Looking at the record as a whole, we conclude CUSD has not demonstrated that any error in admitting the evidence resulted in a miscarriage of justice, such that reversal is warranted.

### E. The Trial Court did not Abuse its Discretion in Allowing Dr. Grant to Testify About Negligent Hiring, Retention, and Supervision Within an Educational Setting.

CUSD contends Dr. Grant never should have been able to provide opinions about negligent hiring, retention, or supervision within an

educational setting because she had no experience, training, or expertise in these areas. Doe responds that CUSD forfeited this issue by not presenting a fair summary of Dr. Grant's qualifications. Furthermore, Doe argues the court did not abuse its discretion in finding her qualified to offer an opinion and in denying the motion to exclude her testimony.

"A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a).) The expert's opinion is limited to "matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates . . . ." (*Id.,* § 801, subd. (b).)

We will not reverse a trial court's determination that a witness qualifies as an expert unless the court manifestly abused its discretion. (*People v. Nelson* (2016) 1 Cal.5th 513, 536.) Such abuse exists only if " ' "the evidence shows that a witness *clearly lacks* qualification as an expert . . . ." ' " (*People v. Chavez* (1985) 39 Cal.3d 823, 828 (*Chavez*).) If the witness demonstrates sufficient knowledge of the subject for the opinion to go to the jury, the degree of the witness's knowledge goes more to the weight of the evidence than to its admissibility. (*People v. Morales* (2020) 10 Cal.5th 76, 97.)

As an initial matter, we agree CUSD's opening brief did not include a recitation of all significant facts as required by California Rules of Court, rule 8.204(a)(2)(C), including those supporting the judgment. This court must consider all the evidence presented regarding her qualifications to determine

31

whether Dr. Grant was qualified to testify on the challenged topics. Nevertheless, we decline to decide this issue based on forfeiture.

Turning to the merits, CUSD contends Dr. Grant was not qualified to opine as to the standard of care related to hiring, supervision, or human resources policy within a school setting because she has never worked as a teacher, administrator, or human resources employee within a school district. However, CUSD fails to acknowledge Dr. Grant's testimony during the Evidence Code 402 hearing that her company provides consulting services to school districts' human resources departments and "also provide[s] risk assessments for school districts where we will come in and review what policies they have in place, hiring, prevention, training, investigation, monitoring, and supervision, and we'll outline for them areas of concern and recommendations for improvement." They identify "best practices for hiring," do third-party investigations for school districts, and provide consulting on proper hiring procedures. She has personally serviced over 200 school districts, working primarily with human resources directors, superintendents, Title IX coordinators, and principals. She also worked as a principal investigator on a department of justice comprehensive school safety initiative that involved analyzing what policies and procedures five U.S. school districts had in place prior to cases of employee sexual misconduct and then evaluating what changed or did not change after those incidents occurred. In light of this evidence, the court allowed her to testify on the challenged topics because, although "[s]he is not an employee . . . the Court finds that that is not required in terms of her ability to opine."

The court did not abuse its discretion in so concluding. Dr. Grant has special knowledge and experience training school districts on proper standards for hiring, supervising, and investigating, and CUSD has offered

32

no authority for the proposition that such experience may only come from working within a school district.  CUSD is correct that "the trial court acts as a gatekeeper to exclude speculative or irrelevant expert opinion" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770; *Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117), but it has not identified why her in depth experience working with schools from the outside makes her opinion any less supported than it would be had she worked for a school district.  Accordingly, because the evidence does not show that Dr. Grant clearly lacks qualification as an expert (*Chavez, supra*, 39 Cal.3d at p. 828), we find no abuse of discretion.

### F. CUSD Has Not Demonstrated the Trial Court Erred in Refusing to Give its Proposed Jury Instructions.

CUSD contends the trial court erred by refusing to provide two special jury instructions it requested.  It argues this failure to clarify CUSD's liability is likely why the jury found CUSD nine times more at fault than the actual perpetrator.

#### 1.  Additional Facts

The trial court instructed the jury with a modified version of CACI No. 426.  This instruction read:

"[Doe] claims that she was harmed by Jordan Bucklew and that Coronado Unified School District is responsible for that harm because Coronado Unified School District negligently hired, supervised or retained Jordan Bucklew.  To establish this claim, [Doe] must prove all of the following:

"1. That Coronado Unified School District hired Jordan Bucklew;

"2. That Jordan Bucklew posed a risk of sexual misconduct toward students;

"3. That Coronado Unified School District knew or should have known that Jordan Bucklew posed a risk of sexual misconduct towards students and that this risk of sexual misconduct towards students created a particular risk to others;

"4. That Jordan Bucklew's risk of sexual misconduct toward students harmed [Doe]; and

"5. That Coronado Unified School District's negligence in supervising and/or retaining Jordan Bucklew was a substantial factor in causing [Doe's] harm."

CUSD proposed instructions targeted at ensuring the jury did not hold CUSD vicariously liable for Bucklew's actions. These instructions provided that (1) sexual misconduct was considered outside the course and scope of employment and (2) CUSD's liability was based on negligence, not a presumption of responsibility for the employee's sexual misconduct. The court declined to give the instructions, explaining that "[t]he way . . . that the jury is going to find liability against the district or not is solely 426, and if it's—those elements aren't met, it's a defense verdict. If those elements are met, it's going to be a plaintiff's verdict." In the court's view, the proposed instructions essentially were argument, and the court was not comfortable "putting [its] thumb on the scale."

## 2. Legal Principles

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported

by substantial evidence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 (*Soule*).) "The trial court may not force the litigant to rely on abstract generalities, but must instruct in specific terms that relate the party's theory to the particular case." (*Ibid.*) But "[i]nstructions should state rules of law in general terms and should not be calculated to amount to an argument to the jury in the guise of a statement of law." (*Fibreboard Paper Products Corp. v. East Bay Union of Machinists, Local 1304, United Steelworkers of America, AFL-CIO* (1964) 227 Cal.App.2d 675, 718 (*Fibreboard*).) "[I]t is error to give, and proper to refuse, instructions that unduly overemphasize issues, theories or defenses either by repetition or singling them out or making them unduly prominent although the instruction may be a legal proposition." (*Ibid.*; see also *Ghezavat v. Harris* (2019) 40 Cal.App.5th 555, 558–559, 561 [concluding trial court properly refused to give special instructions that were argumentative and unduly emphasized party's theory of the case].) "It is not error . . . to refuse to give an instruction requested by a party when the legal point is covered adequately by the instructions that are given." (*Arato v. Avedon* (1993) 5 Cal.4th 1172, 1189 fn. 11 (*Arato*).)

We review the propriety of jury instructions de novo. (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 82.) "When a party challenges a particular jury instruction as being incorrect or incomplete, 'we evaluate the instructions given as a whole, not in isolation.' " (*Ibid.*)

### 3. Analysis

CUSD has not addressed the trial court's contention that CACI No. 426 adequately covered the elements of Doe's negligent hiring, supervision, and retention claim or its concern that CUSD's proposed instructions were

argumentative. It argues only that its proposed jury instructions were correct statements of law.

Regardless of whether the instructions were accurate statements of law, the court did not err if CACI No. 426 adequately covered the legal points. (*Arato, supra*, 5 Cal.4th at p. 1189 fn. 11.) Here, it was apparent from CACI No. 426 that sexual misconduct was considered outside the course and scope of employment from the fact that CUSD could be held liable if it knew of Bucklew's sexual misconduct and did nothing about it. The evidence also showed Bucklew was arrested and pled guilty to a crime because of his conduct. Likewise, CACI No. 426 did not permit liability to be imposed on CUSD unless it found both that (1) CUSD knew or should have known that Bucklew posed an unreasonable risk, and (2) its negligence in supervising or retaining Bucklew as a coach was a substantial factor in causing the harm to Doe from Bucklew's misconduct. Thus, under this instruction, the jury could not have found CUSD vicariously liable simply because, unbeknownst to district staff, its employee engaged in sexual misconduct.

CUSD nonetheless contends the jury was not provided the necessary instruction as to its liability in relation to the liability of the actual perpetrator. But its proposed jury instructions also do not clarify how the jury should allocate fault between the parties. CUSD's proposed jury instructions stated as follows:

"An individual school employee's sexual misconduct with a student is considered outside the course and scope of the individual school employee's employment with the school district. This means the school district is not liable simply because an individual school employee commits sexual misconduct with a student. [And]

36

"[t]he fact that an individual school employee committed sexual misconduct with a student does not establish or raise a presumption that the employing school district bears responsibility for those acts or resulting injuries. A school district's liability must be based on evidence of the school district's own negligent hiring, retention, or supervision."

As CACI No. 426 does, these instructions only address when CUSD may be held liable and when it may not. They do not explain theories of the case or elements not addressed by CACI No. 426, nor do they address allocation of damages between two tortfeasors. Rather, by repeating that a "school district is not liable" and there is no presumption of liability just because a school employee commits sexual misconduct, the instructions unduly overemphasize the defense's existing position. (See *Fibreboard, supra*, 227 Cal.App.2d at p. 718.) And ultimately, the second instruction largely duplicates CACI No. 426. CUSD is not entitled to argumentative instructions (*Soule, supra*, 8 Cal.4th at p. 572), and it has not persuaded this court that the trial court erred in finding the proposed instructions argumentative and unnecessary.

## G. The Trial Court did not Abuse its Discretion in Excluding Bucklew's Statements.

CUSD sought to admit portions of Bucklew's video statements to police, apparently through officer Jade Gutzmer. It argued Bucklew's statements were admissible under Evidence Code section 1224. However, the court ultimately excluded the evidence, relying on Doe's counsel's representation that *Labis v. Stopper* (1970) 11 Cal.3d 1003 (*Labis*) held that Evidence Code section 1224 only applied to situations in which there was a "unity of interest" between the declarant and party, which it said was not the case

here. CUSD contends Doe's counsel misrepresented the language of the *Labis* case, and that the court erred in excluding Bucklew's statements.

Regardless of the holding in *Labis*, the trial court did not abuse its discretion in concluding that Bucklew's statements to the police were not admissible under Evidence Code section 1224, because they were not offered *against* CUSD; instead CUSD itself sought their admission.

Moreover, we will not reverse a judgment absent a showing that the appealing party suffered prejudice. (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107–1108.) It is appellant's burden to establish prejudice by supplying the reviewing court with cogent argument supported by citation to the record and legal analysis. (*Audish v. Macias* (2024) 102 Cal.App.5th 740, 751.) In this case, CUSD does not make clear exactly what evidence it sought to admit or, more importantly, why it was prejudiced by the court's exclusion of the evidence.

The record reflects that Doe objected to CUSD's proposed exhibits based on hearsay. The court sustained the objections only as to trial exhibit numbers 242 through 248, which CUSD describes as containing "evidence about Bucklew's background, coaching, interactions with members on the team and a background regarding the events involving the team." But CUSD does not explain how it was prejudiced by the exclusion of Bucklew's statements or why the outcome of the case would have been different had the trial court admitted this evidence, and the answer is not self-evident based on review of the cited exhibits. Instead, the nine transcript pages that CUSD references seem only marginally relevant, covering generalities about Bucklew's career path and career interests, touching very generally on coaching challenges involving parents at the school, and denying that he had

kissed Doe on the mouth, but then conceding that she had kissed him on the mouth. He generally denied any improper conduct with Doe.

Bucklew's conduct with Doe was not a disputed issue at trial, and therefore we cannot discern the value of the excluded evidence to CUSD. Absent a showing that it is reasonably probable CUSD would have achieved a more favorable result absent the purported error (*Cassim, supra*, *3*3 Cal.4th at pp. 800–801), we find no basis for reversing the judgment on this basis.[3]

## H. CUSD Has Not Demonstrated it was Prejudiced by Dr. Deborah Cresswell's Refusal to Provide her Psychological Testing Data.

CUSD contends that the trial court erred by denying its motion in limine to preclude Doe's psychology expert, Dr. Cresswell, from testifying as to her psychologic testing raw data, because she did not turn over in discovery certain testing results. CUSD brought its motion pursuant to Code of Civil Procedure section 2034.300. That section provides that subject to certain conditions not relevant here, the trial court *shall* exclude the expert testimony of any witness who unreasonably fails to produce reports and writings made by the expert in the course of preparing the expert's opinion. (*Id.*, subd. (c).)

At her deposition, Dr. Cresswell testified that she would not provide her raw testing data to counsel. She had used that data in preparing her report. After the deposition, Doe's attorney told CUSD's counsel that he would, in fact, provide the data; but by the time of the motion in limine, he

---

3    We note that the likelihood of CUSD demonstrating prejudice is lessened further by the fact that some of the same facts came in via Barns's testimony. She said that Bucklew admitted to her that he kissed Doe once. He otherwise denied ever inappropriately touching Doe.

had not done so. At the motion in limine hearing, Doe's counsel proposed that the issue could be resolved if CUSD would enter a protective order or confidentiality agreement.

Thereafter, Doe's counsel drafted a protective order that contemplated that the data would be released to CUSD's expert, Dr. Dominick Addario, and he would make the determination as to whether the data would need to be produced for cross-examination. CUSD's counsel objected as to the form of the protective order, and the court agreed with his concern. Because jury selection was about to begin, the court requested briefing on the issue. Later, during trial, the court heard further argument and then ordered that Dr. Cresswell produce the raw data to Dr. Addario; that in Dr. Addario's discretion, he was allowed to produce the data to CUSD's attorney; that the data was subject to a protective order; and that the data would be destroyed at the conclusion of the case. During her testimony, Dr. Creswell testified that she provided the data directly to Dr. Addario, as ordered by the court. Counsel for CUSD cross-examined her, asking her to compare the details in the raw data with the information that she had included in her report, and suggesting that she had "cherry-picked" the raw data in preparing her report. CUSD's own expert, Dr. Addario, also testified as to his view of the limitations of the raw data as support for Dr. Cresswell's expert report.

We review the trial court's ruling on a motion to exclude expert testimony for abuse of discretion, including its determination that a party "unreasonably" failed to comply with an expert witness demand. (*Staub v. Kiley* (2014) 226 Cal.App.4th 1437, 1445 (*Staub*).) As noted in *Staub*, a party's failure to produce discoverable reports and writings "can have drastic consequences." (*Ibid.*) Here, the raw data prepared by Dr. Cresswell was discoverable and had not been timely produced. Therefore, under the plain

40

language of section 2034.300, the only issue for determination by the trial court was whether the failure to produce it was unreasonable. Here, no party requested such a finding as to reasonableness of the failure to produce, and the court made no such finding.

But even if the absence of the finding constituted error by the trial court, we cannot find that such error prejudiced CUSD. Pursuant to Code of Civil Procedure section 475, "[n]o judgment . . . shall be reversed . . . by reason of any error . . . unless it shall appear from the record that such error . . . was prejudicial, and also that by reason of such error . . . the said party . . . sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred . . . ." Further, as discussed *infra*, Evidence Code section 353 provides that a judgment may not be reversed because of erroneous admission of evidence unless the admitted evidence "resulted in a miscarriage of justice." Here, CUSD ultimately obtained the raw data and was able to cross-examine Doe's expert as to the data and to present Dr. Addario's direct testimony as to his opinion of it. CUSD asserts that it was not able to depose Dr. Cresswell about the raw data, and that Doe's main witnesses had testified by the time the data was received. But CUSD fails to explain what, if anything, could have been addressed in the deposition of Dr. Cresswell that was not covered by her cross-examination at trial; nor does it explain what it might have raised with any other witness in light of the raw data. Further, to the extent that CUSD hoped to discredit Dr. Cresswell's conclusion that Doe suffered from PTSD, such evidence had also come in through the testimony of a different witness, namely her treating psychologist, Dr. Jada Cade.

41

In short, CUSD has failed to demonstrate prejudice or a miscarriage of justice arising from the trial court's ruling on its motion in limine as to Dr. Cresswell's raw data.

## I. The Trial Court Did not Abuse its Discretion in Denying CUSD's Motion for a New Trial Based on Alleged Misconduct of Doe's Counsel and the Jury.

After Dr. Cresswell, an expert witness for Doe, testified as to the likelihood of Doe's need for hundreds of hours of future therapy at three hundred dollars per hour, but prior to closing argument, Doe's counsel informed the court that Doe was withdrawing her claim for future economic losses. After the jury verdict, CUSD moved for a new trial, relying on the declarations of two jurors that they had included the expenses of future therapy in the jury award. CUSD asserted that Doe's counsel engaged in misconduct by offering evidence of future economic damages and then withdrawing its claim, thereby confusing the jury and leading the jury to improperly incorporate future economic damages into its award of noneconomic damages. The court denied the motion, concluding that to the extent the declarations were admissible, they fell short of establishing that the jurors had added in the cost of future therapy to its award of noneconomic damages.

In considering the denial of a motion for new trial, we note that the trial court has broad discretion. "A new trial motion 'is addressed to the judge's sound discretion; [the judge] is vested with the authority, for example, to disbelieve witnesses, reweigh the evidence, and draw reasonable inferences therefrom contrary to those of the trier of fact; on appeal, all presumptions are in favor of the order as against the verdict, and the reviewing court will not disturb the ruling unless a manifest and unmistakable abuse of discretion

42

is made to appear.' " (*Horsford v. Board of Trustees* (2005) 132 Cal.App.4th 359, 379, citing *Mercer v. Perez* (1968) 68 Cal.2d 104, 112–113.)

On appeal, CUSD argues that Doe's counsel committed misconduct, leading to misconduct by the jury in its assessment of damages.

As to misconduct of counsel, we agree with Doe that CUSD has failed to explain in what sense a waiver of damages constitutes misconduct. Further, the trial court considered the extent of Dr. Cresswell's testimony, the relatively small amount of the costs that she testified to, and the overall proceedings, and concluded that CUSD had not established sufficient prejudice to warrant a new trial for the alleged misconduct. The trial court did not abuse its discretion in arriving at this conclusion.

As to misconduct by the jury, the trial court specifically found that "[n]othing in the declarations offered by CUSD indicates the jurors factored in or added the estimated $103,200.00 [i.e. 344 hours at $300 per hour] in future therapy costs as part of the award of future non-economic damages . . . [n]or do these declarations or the jury questions submitted to the Court indicate the jury agreed to disregard or violate the Court's instructions." The court further acknowledged the jury's discretion in reaching a verdict as to noneconomic damages, citing *Phipps v. Copeland Corp.* (2021) 64 Cal.App.5th 319, 338 (noting that the calculation of non-economic damages is a question of fact, which in the first instance is determined by the jury in its discretion). We find no abuse of discretion in the court's reasoning.

CUSD asserts that the jurors improperly discussed and considered the cost of future therapy as part of their deliberations, and that she suffered prejudice as a result. To the extent CUSD implies the court should have factored in statements in the declarations from either party reflecting their subjective mental processes, the court properly determined these statements

43

were inadmissible. Evidence Code section 1150, subdivision (a) provides that "[u]pon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

But, as Evidence Code section 1150 makes clear, the court appropriately considered the admissible portions of the declarations that showed objective facts of the jury's statements and conduct. For instance, one juror whose declaration CUSD offered said, "there were discussions about the fact that [Plaintiff] would need future therapy . . . [w]e agreed that our verdict should take into consideration the expense of future therapy, and this issue was discussed as part of our juror deliberations." As the court noted, the fact that this topic was discussed does not establish that the cost of future therapy was included in the final verdict. Moreover, a counter declaration indicates it was not. That declaration explained that after the discussion about including the need for future therapy, another juror "stated that the instructions and verdict form said we were only to decide the Plaintiff's non-economic damages and that we were not allowed to include the cost of the Plaintiff's future economic damages, such as the cost of future therapy. [¶] . . . there was no additional discussion about the cost of the Plaintiff's future therapy." These descriptions of objective and verifiable statements (see *People v. Hutchinson* (1969) 71 Cal.2d 342, 350 ["the only improper influences that may be proved under section 1150 to impeach a verdict . . . [are] those open to sight, hearing, and the other senses and thus

44

subject to corroboration"]) provide reasonable and solid evidence supporting the court's conclusion. (See *Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 811.)

## J. CUSD Did Not Establish that the Damage Award was the Result of Passion or Prejudice, and Therefore the Trial Court Did Not Err in Denying its Motion for a New Trial Based on Excessive Damages.

CUSD contends the jury's award of $5 million dollars for past and future non-economic damages was excessive and that the court should have granted its motion for a new trial on that basis. Doe responds that CUSD waived its challenge to the damages by failing to fairly summarize the evidence or provide any legal citations.

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) In so doing, the appellant is " 'required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*' " or the error is deemed forfeited. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; see also *Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1072 [concluding an appellant forfeits its claim when it fails to summarize and discuss the record that supports the challenged decision].) Moreover, " '[i]n order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019)

36 Cal.App.5th 142, 146.) Failure to do so may result in the claim being forfeited. (*Id.* at p. 163.)

Although CUSD did not provide this court with any of the relevant standards, "[a] new trial shall not be granted upon . . . the ground of excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision." (Code Civ. Proc., § 657.) On appeal, the court "must determine every conflict in the evidence in respondent's favor, and must give him the benefit of every inference reasonably to be drawn from the record." (*Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 508 (*Seffert*).)

In this case, CUSD has entirely omitted significant facts that support the noneconomic damages award. For example, it fails to include in its briefing that Doe's treating psychologist of four years diagnosed her as suffering from chronic PTSD and that an expert clinical psychologist diagnosed PTSD as well as major depressive disorder as a result of her interactions with Bucklew. CUSD also does not reference Doe's testimony that since the sexual misconduct was discovered, she has felt anxious, embarrassed to go out in her community, and scared. She also expressed experiencing difficulty sleeping, trust issues, fear of being alone, and a fear of intimacy. We cannot determine every conflict in Doe's favor when CUSD has omitted a significant portion of the relevant evidence.

Likewise, we are unable to give Doe the benefit of every reasonable inference when CUSD has drawn the inferences in its own favor in reciting the facts. For instance, CUSD asserts that Doe's "own testimony acknowledged that she never felt forced, threatened or abused at the time the events were occurring." Yet, it would be reasonable to infer otherwise from

46

her testimony that during the incident in the backseat of Bucklew's car, she "was scared" and did not tell him she did not want to do those things because she "didn't really see a way out of it."

As previously noted, "a trial judge is accorded a wide discretion in ruling on a motion for new trial and . . . the exercise of this discretion is given great deference on appeal." (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871–872.) Although "we must fulfill our obligation of reviewing the entire record, including the evidence, so as to make an independent determination as to whether the error was prejudicial" (*Id.* at p. 872), an appellate court may not reverse a damages verdict unless "is so out of line with reason that it shocks the conscience and necessarily implies that the verdict must have been the result of passion and prejudice." (*Seffert, supra*, 56 Cal.2d at p. 508; *Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1213.) CUSD did not cite or attempt to apply this standard in its briefing or provide authority demonstrating why the verdict here must have been the result of passion or prejudice. "We may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.) Here, even if we did not find CUSD's argument forfeited, we conclude it failed to demonstrate that reversal is warranted.

### K. Scope of Retrial

Our conclusions above do not disturb the jury's finding that CUSD was negligent or the amount of the jury's award of damages. There also is no basis for disturbing the jury's conclusion that Bucklew is at fault. Accordingly, the portions of the judgment recognizing the culpability of CUSD and Bucklew are affirmed. However, because we conclude the parents

should have been included on the special verdict form for purposes of apportioning damages, remand for a limited retrial is necessary.

"It is a firmly established principle of law that '[t]he appellate courts have power to order a retrial on a limited issue, if that issue can be separately tried without such confusion or uncertainty as would amount to a denial of a fair trial.' " (*Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 776.)

In *Collins v. Plant Insulation Co.* (2010) 185 Cal.App.4th 260, the First District found a limited retrial appropriate under circumstances very similar to those presented in this case. The family of a worker who died from mesothelioma because of workplace exposure to asbestos sued his employer and multiple other entitles. (*Id.* at p. 264.) The court granted a directed verdict for the United States Navy, finding it was immune, and that fault could not be allocated to it. (*Ibid.*) One of the defendants appealed, challenging the ruling to the extent it excluded the Navy from the list of entities that could be found at fault. The appellate court agreed, concluding that although the Navy was in fact immune from suit, it should nonetheless have been included on the verdict form for apportionment among the other parties at fault. Because the defendant had not challenged the jury's liability verdict, the court concluded it could remand for a retrial limited to apportionment of fault, including the Navy, without causing "confusion or uncertainty." (*Id.* at pp. 276–277.)

The same is true here. As another court pointed out in ordering a limited retrial, "[i]t is true that, in order to make a proper allocation of damage, the jury on the new trial will have to hear, and weigh, anew, all of the evidence dealing with the conduct of the parties." (*O'Kelly v. Willig Freight Lines* (1977) 66 Cal.App.3d 578, 583.) But the jury may be told when

48

the case is submitted that (1) they must find as a matter of law in this case that both CUSD and Bucklew are culpable to some degree—CUSD for negligence and Bucklew for his intentional conduct, and (2) the total damages award to be allocated is $2.5 million in past noneconomic damages and $2.5 million in future noneconomic damages. The court should instruct the jury that their sole function is to determine how to apportion the damages to one or both parents, if at all; and to Bucklew and CUSD.

## DISPOSITION[4]

The judgment is reversed as to the apportionment of fault. In all other respects, it is affirmed. The matter is remanded for a retrial limited to a jury's apportionment of fault among Doe's parents, if any, and CUSD and Bucklew, for the past and future noneconomic damages that have been found by the jury. Each party shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

KELETY, J.

WE CONCUR:


DATO, Acting P. J.


CASTILLO, J.

---

[4] Because we find it necessary to reverse and remand for a new allocation of fault that includes the parents, we need not address Doe's challenge on cross-appeal to the trial court's partial granting of CUSD's motion for JNOV and its reallocation of fault.